## Baberick et ux. v. Abington Township et al.

*Gordon Butterworth* and *Alexander Knight*, for plaintiffs.

*David E. Groshens*, for defendants.

CORSON, J., July 7, 1954.—On April 10, 1951, plaintiffs filed a petition for a declaratory judgment under the provisions of the Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840, as supplemented by the Act of May 22, 1935, P. L. 228, and the Act of May 26, 1943, P. L. 645, 12 PS §§831 et seq.

On May 1, 1951, an answer on the merits was filed by defendant township.

On November 13 and 14, 1951, 239 pages of testimony were taken. At that time, as appears on page 238 of the testimony, it was stated that briefs would be filed and a time fixed for oral argument. It does not appear on the notes of testimony as to what date they were filed.

On June 25, 1952, a letter was received by the trial judge stating that plaintiffs' brief was being prepared and that they would present it to me sometime after July 5, 1952.

On March 9, 1953, the trial judge, after directing his secretary to call counsel for plaintiffs about the brief, received a letter dated March 9, 1953, stating that counsel for plaintiffs wished to file briefs in support of the petition and asked for further time.

Sometime later the brief was filed, although it does not appear from looking at the brief exactly when such filing took place. Apparently the delay in filing the brief was caused by the rather serious illness of Mr. Butterworth.

Counsel for defendants then asked for time to file defendants' brief as he stated he had forgotten entirely about the case during the delay in the filing of plaintiffs' brief. However, this delay continued for such a long period of time that in May of this year the trial judge who heard the testimony directed that oral argument be heard on Tuesday, June 15, 1954, and that if defendants' brief was not forthcoming at the time of argument, the case would be decided without it. While this was referred to as a reargument, it was actually the only oral argument held in the case, as already noted.

While defendants first raised the question of the propriety of a declaratory judgment, upon the theory that the questions here raised could be raised in attacking the liens as filed, and cite the supplemental Act of 1943, supra, which provides, "Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; . . .", and the case of Fahey Estate, 356 Pa. 535 (1947), yet since defendants answered upon the merits and did not file an answer raising questions of law, as provided in the supplemental Act of 1935,

supra, sec. 5, we feel that a declaratory judgment must be rendered.

It would appear that in 1928 Abington Township, which is a first class township, passed an ordinance with a more or less comprehensive plan of sewers for the entire township. This plan involves gravity flow sewage disposal in the three different watersheds of the township. These are referred to as the Tacony, Pennypack, and Wissahickon watersheds. Various methods of carrying this plan into effect were suggested and experimented with, such as sewer authorities, electoral and councilmanic borrowing, etc. Admittedly the population of Abington Township has increased so rapidly that it has been impossible for the township to keep pace so far as the construction of sewers is concerned, with such large and sudden increase.

As the assessed valuation in the township increased, the borrowing power, either through councilmanic or electoral loans was increased and the construction of sewers and sewage disposal equipment and plant has increased through the years. The cost of the expensive disposal plants and large trunk sewers has been paid out of general township loans or at least moneys received from general taxation. On the so-called feeder lines the township has used the so-called front-foot rule assessment against the owners of properties abutting upon, and benefited by such feeder lines.

These feeder lines have been constructed in some cases by the issuance of nondebt revenue bonds under which the bonds are paid off from the assessments and sewer rentals. The costs under the various contracts which specifically cover certain areas of the township, as shown by the plan attached to the petition, vary greatly as to the cost per foot in the sewer construction.

Plaintiffs live in the area sewered under contract no. 13. Thirteen in this case appears to have been unlucky

so far as plaintiffs are concerned because of the fact that front-foot assessments under this contract amounted to over $11, while other contracts, both later and earlier, were much less—in some cases so low as to be in the neighborhood of $3 per foot. Under such circumstances it is not to be wondered that the owners of properties in the geographical district covered by contract no. 13, feel that they have been most unfairly treated.

The question to be decided, however, is not whether they have been unfairly assessed, but whether they have been illegally assessed. Counsel argues that the township should have fixed a certain arbitrary front foot charge for feeder line sewer construction in the entire township and that any difference between the cost of any line and the actual higher cost of construction should be paid by the township from general taxation.

We agree with counsel for defendants, however, that such assessment by defendants would have been not only impractical but illegal. Where nondebt revenue bonds are issued, the assessments and rentals must be sufficient to take care of the repayment of such bonds. It would seem also that if the cost of construction amounted to less than the arbitrary charge fixed by the township, the property owner could, and would, most seriously object to paying an assessment higher than the actual cost. The only happy property owners in such case would be those who obtained their sewers at less than the cost of construction.

Petitioning plaintiffs, in their most able and comprehensive brief, raise two questions.

The first question is that since the township did not divide the township into sewer districts, that the township is required to treat the entire township as one district in which assessments shall be equal. We shall discuss this contention before taking up the remaining two.

It is admitted that the township, in 1928, when the so-called Abington Hospital sewer line was constructed, did establish a separate sewer district known as the Baeder Creek district. It is also admitted in defendants' answer that on May 2, 1945, defendants prepared and filed a comprehensive plan for a sanitary sewer system, revised as of September 13, 1945. It is obvious that defendant township at that time could not possibly have paid for, or contracted for, the construction of all of these proposed sewers under one contract.

Section 2407 of the First Class Township Code, of June 24, 1931, P. L. 1206, provides, inter alia, that "the commissioners of such township *may* constitute the territory accommodated into a sewer district or divide it into several sewer districts." (Italics supplied).

The use of the word "may" would seem to indicate that the creation of such sewer districts was not a necessary requirement under the township code. If such districts had been created, obviously the cost of construction of sewers in such districts would have varied depending upon the amount of rock removal that might be necessary, the topography of the district, and the springs or other difficulties that might be encountered.

The cost would also vary depending upon the varying cost of labor and materials. It would seem that plaintiffs, as to this contention, have only a technical complaint because, for practical purposes, the geographical districts in which feeder line sewers were constructed are referred to by contract numbers rather than as sewer district numbers. For practical purposes, there would seem to be no dissimilarity except in name.

Plaintiffs' second contention raises a novel question that has never been passed upon in any court so far as research can disclose. Plaintiffs contend that in these

various contract areas, and particularly perhaps in contract no. 13, defendant did not assess the full frontage of all properties abutting on such sewer. In the construction of these sewers there were quite a number of occasions where sewers approached the crest of a hill, possibly in two different waterheds. Instead of continuing such sewers so that they met and connected at the top of such hills, defendants only built the sewer as far as the last property on each side of the crest.

Thus, a property owner might own a lot with a 150-foot frontage on the street and yet the sewer was only built, for example, 10 feet beyond his lower property line. This property owner was then only assessed for 10 feet of frontage rather than 150 feet. Plaintiffs contend that under the wording of the act this owner should have been assessed for the full 150 feet of such frontage. Whether this contention is to be sustained depends upon the construction to be placed upon the wording of the act covering assessments under the front-foot rule. The First Class Township Code of June 24, 1931, P. L. 1206, supra, sec. 2408, covering assessment of properties accommodated or benefited provides that they may be assessed as follows:

"(a) By an assessment, pursuant to township ordinance, of each lot or piece of land in proportion to its *frontage abutting on the sewer* ....." (Italics supplied).

Plaintiffs contend that the frontage referred to should be the entire frontage and defendants contend that they could only assess for the length of the sewer which abuts upon that frontage. Plaintiffs contend that where there is any ambiguity or doubt, that the construction should be the construction that is most equitable. Even based upon the equities it would seem that the owner of such 150-foot lot should not be charged for the full amount because of the fact that

if he should sell a 75-foot lot at the higher end of his lot, the purchaser of such property would have no sewer facilities except by building a line either in the street, if that were permited, or across the lower 75-foot lot, which would have to be agreed to by the lower lot owner.

In any event, the expense would be much greater than if the sewer had been constructed along the entire frontage. Certainly no plan can ever be evolved that will do exact justice in all cases. We feel that section 2408 must be construed to mean that the assessment can only be made upon that part of the frontage of the particular lot that abuts upon the sewer. The chance of location may theoretically favor the owner of such lot but under the act we cannot see how defendants could have acted otherwise than they did in making the assessments.

The third contention of plaintiffs is that defendants erred in providing that the assessed property owners, while they are given the privilege of paying the assessments in installments, are required to pay interest at six percent upon all such unpaid installments after the first. Section 2501 of the First Class Township Code, supra, provides that the township may require the payment of interest upon such unpaid installments at a rate not to exceed six percent. The ordinance in this case provided for the payment of interest without mentioning the amount. Defendants contend that the legal rate of interest in Pennsylvania being six percent that is the amount that should be charged unless a lesser rate is fixed or agreed upon and that in the absence of the fixing of any lesser rate, the presumption is that the legal rate is in effect. See Kulp's Estate, 56 Montg. 399 (1946). Since the township does not charge interest upon the first installment, the interest payment upon the entire assessment would be something less than six percent. We feel that plaintiffs'

third contention cannot be sustained as to the amount charged.

Plaintiffs, however, have a second contention in connection with the interest charges. This contention arises under the Township Code of June 24, 1931, supra, as amended by the Act of May 21, 1943, P. L. 535, sec. 1, and the Act of May 27, 1949, P. L. 1955, sec. 50, 53 PS §§19092-2505, relating to the payment of assessments for sewers. The last sentence of that section is as follows:

"The moneys so received by the township shall be applied to the payment of such bonds and interest *thereon exclusively.*" (Italics supplied.) Defendants contend that such interest payments were placed in a so-called revolving fund and were not used exclusively in payment of principal and interest of the bonds issued in connection with the individual contracts for the payment of which such assessments were made. If, however, the township has the right to collect such interest from the property owners, the person who would seem to be aggrieved by failure to use such interest to pay the principal and interest of the bonds, would be the purchasers of such bonds.

Again, if the property owners complain as to the expenditure of such interest by defendant commissioners, it would seem that that question should be raised in an attempt to surcharge the commissioners for misapplication of township funds. However, such an attempt to surcharge would seem to be rather useless because if the bonds and interest were paid by the township, it is practically impossible to tell which particular dollars or funds in the hands of the commissioners were used for that purpose. If such bonds and interest have been paid, it would be foolish and illegal to require the commissioners to turn over any surplus consisting of such interest to such bondholders. The best that plaintiffs could hope for would be a requirement that the commissioners make a bookkeeping

entry crediting such interest to the fund for the payment of such bonds and interest, whereupon when the bonds and interest were paid such surplus would be again returned through a bookkeeping entry to the so-called revolving fund or the general funds of the township.

And now, July 7, 1954, for the reasons given in the foregoing opinion, it is ordered, adjudged and decreed that the questions of law raised upon the facts set forth by plaintiff petitioners are decided in favor of defendants.